UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBERT LEE EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-769-P |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382 ("the Act"). Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.   Administrative History and Agency Decision

Plaintiff filed his applications for DIB and SSI on September 16, 2019, alleging a disability onset date of October 15, 2016. The claims were denied initially and on reconsideration. Plaintiff and a vocational expert ("VE") testified during a telephonic hearing before an Administrative Law Judge ("ALJ") on January 28,

2021. AR 36-59. The ALJ issued an unfavorable decision on February 26, 2021. AR 20-31.

The Social Security Administration has devised a five-step sequential evaluation process to determine disability. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750, 751 n.2; *Grogan*, 399 F.3d at 1261. If the claimant has met his burden of proof through the first four steps, the burden of proof then shifts to the Commissioner to show the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142.

In this case, the ALJ determined Plaintiff met the insured status requirements for DIB through December 31, 2020. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. The ALJ

noted that payment records indicated Plaintiff performed some work after his alleged onset date, but the work did not rise to the level of substantial gainful activity. AR 23.

At step two, the ALJ found Plaintiff has the following severe, medically determinable impairments: tobacco abuse, chronic bronchitis, and chronic obstructive pulmonary disease. ("COPD"). AR 23. At the third step of the sequential evaluation process, the ALJ determined that none of Plaintiff's severe impairments, alone or in combination, met or medically equaled one of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23. The ALJ specifically determined that pulmonary test results demonstrated that Plaintiff's tobacco abuse, chronic bronchitis and COPD did not meet the requirements of Listing 3.02.

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium exertion work as defined in 20 CFR 404.1567(c) and 416.967(c), except the claimant must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. The claimant has no other limitations or restrictions.

AR 24. The ALJ determined Plaintiff could not perform his past relevant work as welder and farm hand. AR 29.

At the fifth step of the sequential evaluation, the ALJ considered Plaintiff's age, his limited education, his RFC, and the testimony of the VE before concluding there are jobs existing in significant numbers in the national economy that Plaintiff can perform. AR 30. The ALJ identified three such jobs: counter supply worker, dining room attendant, and sandwich maker. The ALJ determined the testimony of the VE was consistent with the information listed for these jobs in the *Dictionary of Occupational Titles*. AR 30. Accordingly, the ALJ determined Plaintiff was not disabled.

Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. <u>Standard of Review</u>

The Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last no less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The Court must determine whether Defendant's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation, quotations, and alteration omitted). The Court must also be mindful that reviewing courts may not create post-hoc rationalizations to explain Defendant's treatment of evidence when that treatment is not apparent from the decision itself. *Grogan*, 399 F.3d at 1263 (citing, *e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

III. <u>Issues</u>

Plaintiff challenges the ALJ's RFC determination alleging legal error; Plaintiff contends the ALJ failed to properly evaluate the statement of consultative

5

examiner, Leonard McNeil, PA, relying instead on medical source opinions of non-examining, state-agency physicians.

Plaintiff also argues the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied upon medical opinions rendered before Plaintiff fell from a horse and broke his ankle. The ALJ properly considered all the evidence in finding that Plaintiff's broken ankle was not a severe impairment and did not prevent him from performing some medium exertion work. AR 23. The Court finds no evidence that contradicts the decision of the ALJ in this respect.

IV. Analysis

   A. Relevant Facts

Plaintiff was 52 years old on his alleged disability onset date—an age classified as "closely approaching advanced age" as defined in the Medical-Vocational Guidelines. 20 C.F.R. § 404, Subpart P, Appendix 2. He filed his applications for benefits shortly after he turned 55 years old—an age classified as "advanced age." *Id.* Plaintiff has a limited education, having finished the eighth grade and perhaps part of the ninth grade. His past work experience was as a welder and a farm hand.

   B. Relevant Medical Evidence

Plaintiff has summarized his medical records, which demonstrate the ALJ correctly identified his severe impairments at the second step of the sequential

evaluation. Plaintiff presented to medical sources repeatedly, exhibiting signs and symptoms of COPD, asthma, and often acute bronchitis. Doc. No. 21 at 7-12. The records are also replete with notations that Plaintiff continued to smoke after being advised to quit. These records support the ALJ's finding that "tobacco abuse" constituted a severe impairment.

Objective medical tests confirmed Plaintiff's COPD diagnosis. These tests include a chest x-ray taken on October 30, 2016. AR 345. When Plaintiff complained of shortness of breath and chest pains, Addi Abuelshar, M.D., ordered a combined M-mode, 2-D, and color flow Doppler performed on November 1, 2016. This revealed mild concentric left ventricular hypertrophy, with an ejection fraction of 62%, a finding well within the normal range. AR 349. Another chest x-ray dated November 21, 2019, demonstrated "hyperlucency with increased retrosternal clear space consistent with COPD." AR 455. The ALJ also considered function reports from Plaintiff and Plaintiff's testimony.

### C. Consideration of Medical Statements

The primary issue in this case centers on four statements from medical sources. The Court must consider the extent to which these statements constitute true "medical opinions" and the extent to which these statements are consistent with the medical evidence in the record. The Court must then determine whether the ALJ properly considered these statements and whether substantial evidence supports the

ALJ's decision. The Court is mindful of its duty to refrain from re-weighing the evidence. However, the Court is also mindful of its duty to "meticulously examine the record" to determine whether the evidence in support of the Commissioner's decision is substantial and to "take into account whatever in the record fairly detracts from its weight." *Washington v. Shalala*, 37 F.3d 1437, 1439-40 (10th Cir. 1994) (citation omitted).

On December 13, 2019, Plaintiff was referred to Leonard McNeil, PA, LLC, for a physical consultative examination. AR 440-41. Mr. McNeil was the only one of the four medical sources who examined Plaintiff. Plaintiff presented to Mr. McNeil with complaints of COPD, chronic asthma, dizziness, lightheadedness, and chronic fatigue. Mr. McNeil noted Plaintiff's past medical history was significant for severe COPD and asthma. Plaintiff acknowledged that he was smoking approximately one pack of cigarettes per day.

Mr. McNeil found Plaintiff's lungs to be "clear to auscultation bilaterally anterior and posterior." AR 441. Plaintiff demonstrated full active range of motion of all joints, his reflexes were intact, and straight leg raises were normal, as was his gait. *Id.* Most of Mr. McNeil's findings were normal. Mr. McNeil did report, however, that Plaintiff exhibited shortness of breath with little exertion. He observed that Plaintiff's breathing was labored when he did no more than walk around the examination room. Mr. McNeil did not report any other limitations in work-related

activities. Finally, Mr. McNeil stated that Plaintiff's "current respiratory status will make it difficult to find meaningful employment for which he may be qualified." *Id.*

Three non-examining agency medical sources reviewed Plaintiff's medical records, including Mr. McNeil's report. Their opinions are virtually identical. William Spence, M.D. rendered his initial assessment of Plaintiff's ability to perform work-related functions on December 18, 2019. He included the following Function Report:

> [S]hortness of breath interfering with daily activities, gets up, drinks coffee, feeds the dog, watches TV, spouse cooks for him and does the housework. Sleep can [be] disturbed due to pain in legs and jerking in sleep. He doesn't cook because [he] forgets to turn off stove and [can't] stand long to cook. He can prepare a simple meal like a sandwich. He doesn't drive, has no license. He doesn't go out alone, due to problems with shortness of breath. He goes grocery shopping with his wife. He forgets to pay bills, so wife handles money. He likes to fish, watch TV and play cards. However, [can't] fish anymore "unless wife or son takes me so the water isn't far to walk". He has trouble concentrating and sometimes forgets what he is doing. He sometimes has trouble getting along with others. Handles changes in routine, "not good".

AR 103. Dr. Spence then analyzed the evidence:

> Based on information in file from treating physicians and CE as well as CE PFS[,] claimant has a moderate limitation to work activities as the result of COPD. This MDI is established by long term treatment records and description from treating physician in hospital of COPD changes on x-ray.

*Id.*

Dr. Spence determined Plaintiff could perform medium exertional work. He noted that Plaintiff was of advanced age with limited education and no transferable

skills. He then applied Medical-Vocational Rule 203.11 as a framework. Rule 203.11 directs a decision of "not disabled" for a person who can perform medium work, even when the person is of advanced age with limited education and no transferable skills. Dr. Spence did not apply this rule directly because Plaintiff has non-exertional limitations—he must avoid exposure to environmental irritants. AR 102. Therefore, Dr. Spence used Rule 203.11 as a framework.

Wyatt Rousseau, M.D., rendered his reconsideration opinion on April 3, 2020. His Function Report and Analysis of Evidence, AR 118-19, appear to be taken word for word from the same sections of Dr. Spence's Function Report. He, too, determined Plaintiff was able to perform medium work, and he, too, used Medical Vocational Rule 203.11 as a framework to determine Plaintiff was not disabled. AR 120. On April 3, 2020, Steven Bowers, M.D., reviewed Dr. Rousseau's assessment and agreed with the latter's findings. AR 122-127.

The ALJ rejected Mr. McNeil's statement, finding that "Mr. McNeil's opinion is inconsistent with the medical opinions by Dr. William Spence, M.D., Dr. Wyatt Rousseau, M.D., and Dr. Steven Bowers, M.D. . . ." AR 28.

The revised rules for assessing medical opinions are applicable to this case. Under the revised rules, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical

sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, all medical opinions and prior administrative medical findings start on equal footing, and ALJs evaluate their persuasiveness by considering the factors outlined in the regulations. *See* 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

Of the factors to be considered, "the most important . . . are supportability and consistency with the record." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). By "supportability," the regulations mean that opinions are more persuasive if they are supported by relevant objective medical evidence and supporting explanations. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). By "consistency," the regulations mean that medical opinions are more persuasive when they are not refuted by evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Additionally, the regulations set forth several factors an ALJ may consider about the relationship between the claimant and a medical source who has rendered an opinion. *See* 20 C.F.R. § 404.1520c(c)(3)(i-v), 416.920c(c)(3)(i-v). Relevant to this case is the fifth element: "Examining relationship." The regulations state, "A medical source may have a better understanding of [the claimant's] impairment[s] if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

Here, Mr. McNeil observed firsthand that Plaintiff "exhibited shortness of breath with little exertion." His statement that Plaintiff's "current respiratory status will make it difficult to find meaningful employment for which he may be qualified" is based on his observation and supported by the evidence in the record demonstrating Plaintiff's frequent need for emergency medical attention. That said, Mr. McNeil did not have a significant, longitudinal relationship with Plaintiff, having examined Plaintiff only one time. What is more, neither the report of his observations that Plaintiff experienced shortness of breath upon very little exertion nor his statement regarding the ability of the Plaintiff to find employment qualify as a true "medical source opinion" as that term is defined in the revised regulations:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Mr. McNeil's statements do not qualify as "medical opinions" as defined in the regulations. The medical opinions of Dr. Spence and Dr. Rousseau, however, do meet the definition of "medical opinions" as set forth in the regulations. These opinions are supported by the evidence in the record as a whole and constitute substantial evidence supporting the ALJ's decision. Thus, the ALJ's reliance upon the state agency medical source opinions does not constitute error.

V. Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this 31st day of May, 2022.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE